UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEAF O'NEAL, ALEXIS UBIERA, and IVAJLO MILANOV, Individually and on Behalf of all Others Similarly Situated,<br><br>      Plaintiffs,<br><br> - against -<br><br>FREM GROUP, L.P., STAMFORD CLUB MANAGEMENT, INC., YORKTOWN CLUB MANAGEMENT, INC., WESTCHESTER INDOOR TENNIS, LTD., STAMFORD INDOOR TENNIS CORPORATION, ELIZABETH GAGLIARDI, ROSEANN GAGLIARDI, FRANK GAGLIARDI and JOHN DEFILLIPO,<br><br>      Defendants. | Civil Action No. 11-CV-2633<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND ISSUANCE OF NOTICE UNDER THE FAIR LABOR STANDARDS ACT** |

Dated: May 11, 2012
   New York, New York

                Respectfully submitted,

                **FARUQI & FARUQI, LLP**
                Adam Gonnelli (AG-4782)
                369 Lexington Avenue, 10th Floor
                New York, New York 10017
                Telephone: (212) 983-9330
                Facsimile: (212) 983-9331

                *Attorneys for Plaintiffs*

**I.     INTRODUCTION**

Named Plaintiffs Leaf O'Neal, Alexis Ubiera and Ivajlo Milanov ("Plaintiffs") are tennis instructors and former employees of Defendants.  Defendants own and operate three tennis clubs under the trade name "Solaris" in Hawthorne, N.Y., Yorktown, N.Y. and Stamford, CT.

Plaintiffs allege that the Defendants (collectively referred to as "Solaris") violate the labor laws in the treatment of its tennis instructors because Solaris: (1) does not pay appropriate overtime; (2) requires its employees to work "off-the-clock" hours without pay; and (3) fails to pay its New York employees "spread of hours" premium pay when the work more than ten hours in a single workday.

On April 18, 2011, the named Plaintiffs filed a complaint (the "Complaint")[1] in this Court seeking compensation for unpaid overtime, appropriate pay for unpaid hours and "spread of hours" premium pay under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  Since that time, four other tennis instructors have filed Consent to Sue forms and have joined the action as plaintiffs.

By this motion, Plaintiffs seek to protect the rights of dozens of current and former employees by moving for conditional certification of a collective action under the FLSA and asking the Court's leave to disseminate court-authorized notice of this action to all potential opt-in plaintiffs.  In addition to the allegations in the Complaint, Plaintiffs have submitted seven declarations in support of this motion, and have amply satisfied their minimal burden to show that Plaintiffs and the potential collective action members are similarly situated.

---

[1] Plaintiffs' Complaint is attached to the Declaration of Adam Gonnelli ("Gonnelli Decl.") as Exhibit A.

The group that Plaintiffs' propose to send notice to is: "***All non-salaried tennis instructors, and in addition, any salaried tennis instructors who worked over forty hours per week***."

Thus, Plaintiffs respectfully request that the Court: (a) conditionally certify this action as a collective action pursuant to 29 U.S.C. § 216(b); (b) order Defendants to produce identifying information for each of the potential opt-in plaintiffs; and (c) authorize prompt notice to all former and current employees to give them the opportunity to opt in to this litigation.

## II.   FACTS

Movants are tennis instructors and former employees of the Defendants. Each has filed a Consent to Sue form in this action and each has submitted a declaration in support of this motion.[2]

At the three Solaris clubs,[3] tennis instructors were required to work many hours without pay which they were not permitted to record. Some of this "off-the-clock" work was work performed off the court, including pre-shift time, calls and emails with club members, staff meetings, and paperwork.[4]

In addition, however, tennis instructors were required to staff after-hours USTA (United States Tennis Association) tennis matches without compensation for all hours worked.[5] Indeed, some pros were never paid anything for this work.[6]

---

[2] Affidavit of Leaf O'Neal ("O'Neal Aff."); Affidavit of Alexis Ubiera ("Ubiera Aff."); Affidavit of Ivajlo Milanov ("Milanov Aff."); Affidavit of Stephen Marton ("Marton Aff."); Affidavit of Quan Huynh ("Huynh Aff."); Affidavit of Thad Hughes ("Hughes Aff."); and Affidavit of Greg Stoffer ("Stoffer Aff.") attached to the Gonnelli Decl. as Exhibits B–H.

[3] The management team, which includes the individual defendants, has established a set of consistent employment policies and practices at all three locations to which all of the potential collective action members are subject. Hughes Aff. ¶¶ 6-8.

[4] O'Neal Aff. ¶ 6; Ubiera Aff. ¶ 6; Milanov Aff. ¶ 6; Marton Aff. ¶ 7; Huynh Aff. ¶ 5; Hughes Aff. ¶¶ 7(b)-(c); 18; Stoffer Aff. ¶ 15.

[5] O'Neal Aff. ¶¶ 17-21; Milanov Aff. ¶¶ 15-17; Huynh Aff. ¶¶13-18; Hughes Aff. ¶¶ 20-24; Stoffer Aff. ¶ 15.

Besides the after-hours USTA matches, the tennis instructors also worked on USTA tournaments on the weekends.[7]  Many of the pros were paid out of a pool according to the number of participants in the tournaments.  However, this division among pros sometimes left them with an hourly rate less than minimum wage.  *See* Marton Aff ¶ 15; O'Neal Aff. ¶ 15.  Sometimes they weren't paid at all.  *See* O'Neal Aff. ¶ 16; Milanov Aff. ¶ 14.

In terms of overtime, none of the tennis instructors were paid time and a half when they worked over forty hours per week.[8]  Of course, even if Solaris did pay overtime, the amount of overtime paid would be inaccurate because of all the unrecorded time spent working on the tournaments and matches and on the off-court tasks.

Lastly, when instructors at the Hawthorne and Yorktown clubs worked more than ten hours in a single workday they did not receive "spread of hours" premium pay for that work as required by New York's labor regulations.  *See* Complaint ¶¶ 2, 4, 76.

## III. ARGUMENT

### A. Conditional Certification Requires A Very Limited Showing

The collective action provision, 29 U.S.C. § 216(b), allows an action "against any employer … in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  Certification of a group of similarly situated collective action members is a two-step process.  First, the court makes a preliminary determination as to whether the proposed collective action members are "similarly situated" to the plaintiffs.  *See Myers v. Hertz Corp.*, 624 F.3d 537, 554

---

[6]  Milanov Aff. ¶ 17; Huynh Aff. ¶ 18; Hughes Aff. ¶ 24.

[7]  O'Neal Aff. ¶¶ 13-16; Milanov Aff. ¶¶ 12-14; Marton Aff. ¶¶ 13-15;  Huynh Aff. ¶ 12; Hughes ¶¶ 28-30; Stoffer Aff. ¶ 15.

[8]  O'Neal Aff. ¶ 11; Ubiera Aff. ¶ 10; Milanov Aff. ¶ 11; Marton Aff. ¶ 11; Huynh Aff. ¶ 10; Hughes ¶ 7(a); Stoffer Aff. ¶¶ 18-19.

(2d Cir. 2010).  This is a low hurdle whose purpose "is merely to determine whether 'similarly situated' plaintiffs do in fact exist." *Id.* at 555.

The relatively low 216(b) standard is consistent with the remedial purpose of the FLSA. S*ee Morales v. Plantworks, Inc.*, No. 05 Civ. 2349 (DC), 2006 U.S. Dist. LEXIS 4267, at *5 (S.D.N.Y. Feb. 1, 2006) (noting that "leniency" of conditional certification standard is consistent with the remedial purpose of the FLSA).  Accordingly, the burden on Plaintiffs at this preliminary stage is "minimal."  *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) (finding "minimal" burden met and conditionally certifying class of carpet installers and authorizing notice).

### B.     All the tennis instructors are "similarly situated"

In order to be "similarly situated," other employees must merely be victims of the same conduct that is the subject of plaintiffs' complaint.  *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 95  (S.D.N.Y. 2003) (issuing notice where the plaintiff alleged that defendants deprived other employees of overtime).  Here, all seven declarants have stated that the non-salaried pros were not paid for all the hours they worked, and that none of the pros were ever paid premium overtime pay.[9]  Indeed, Mr. Hughes, who was for a time "Head Pro" and Mr. Stoffer, who tabulated the pay records, noted that it was a universal policy.  *See* Hughes Aff. 7(a); Stoffer Aff. ¶ 11.

Here, some of the tennis instructors received a small weekly salary or hourly off-court pay at different times during their employment.  *See* Hughes Aff. ¶ 31 ($350 weekly salary while Head Pro); O'Neal Aff. ¶ 7 ($15 per hour for part of his tenure, but not allowed to record all hours worked); Hunyh Aff. ¶ 6 ($200-$400 weekly salary for part of his tenure); Stoffer Aff. ¶ 5 (weekly salary while "Front Desk Manager").  But "similarly situated" does not mean

---

[9] *Id.*

"identically situated." *Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194 (RMB) (DF), 2005 U.S. Dist. LEXIS 30321, at *16-17 (S.D.N.Y. Nov. 29, 2005) ("Contrary to Defendants' implication, Plaintiffs need not show that they are 'identically situated to potential class members' for approval of a collective action"); *Foster v. The Food Emporium*, No. 99 Civ. 3860 (CM), 2000 U.S. Dist. LEXIS 6053, at *5 n. 2. (S.D.N.Y. Apr. 26, 2000) ("Identity of claims . . . is not required."); *Abrams v. Gen. Elec. Co.,* No. 95-CV-1734 (FJS), 1996 U.S. Dist. LEXIS 16869, at *7 (N.D.N.Y. Nov. 4, 1996) ("[A] finding of "similarly situated" does not require the plaintiffs to perform the same job in the same location as long as there is a discriminatory policy common to all.").

The fact that the specifics of some employees' treatment varied is of little significance, especially at the preliminary stage. *See Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. 2007) (of eight declarants, four allege that they were not fully compensated for overtime; five not paid for training; two forced to work off the clock). Even having different jobs is no impediment to collective certification so long as the employees are subject to the same types of wrongful conduct, as the tennis instructors were here. *See, e.g., Mazur,* 2005 U.S. Dist. LEXIS 30321, at *13-22 (rejecting defendants' argument and certifying collective action and authorizing notice in case involving seven different job descriptions against four corporate entities in different locations); *Fasanelli*, 516 F. Supp. 2d at 322 (certifying a class of servers, bartenders, runners, and bussers); *Diaz v. Scores Holding Co., Inc.,* No. 07 Civ. 8718 (RMB), 2008 U.S. Dist. LEXIS 38248, at *11-12 (S.D.N.Y. May 9, 2008) (certifying a class of dancers, bartenders, cocktail servers and waitresses.).

Defendants will no doubt argue that these differences defeat certification. However, the common issues predominate over these minor exceptions: None of the non-salaried tennis

instructors were paid for all the hours they worked, and none received overtime or spread of hours pay.

Besides the fact that these differences are not significant enough to prevent notice from going out to the other tennis instructors, a fact-specific inquiry is premature at this stage. Indeed, this Court has specifically rejected the small line of cases seeking to conduct a fact specific inquiry at the collective certification stage and thus raise the 216(b) standard. *See Francis v. A&E Stores, Inc.*, No. 06 Civ. 1638 (CS) (GAY), 2008 U.S. Dist. LEXIS 83369, at *12 (S.D.N.Y. Oct. 15, 2008) (rejecting reasoning of *Diaz v. Electronics Boutique of America, Inc.,* No. 04-CV-0840E (Sr), 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 13, 2005) as "against the weight of authority"); *see also Cohen v. Gerson Lehrman Group, Inc.*, 686 F. Supp. 2d 317, 329-30 (S.D.N.Y. 2010) (citing *Francis* and rejecting reasoning in *Diaz*).

The seven affidavits submitted herewith are more than sufficient to meet the "minimal" burden for preliminary certification and notice.[10]

The affidavits demonstrate that none of the non-salaried pros were paid for all the hours they worked, and that none of the pros, whether salaried or not, were ever paid time and half when they worked over forty hours per week.[11] Furthermore, although the New York employees were often required to work more than ten hours in a single workday, none of the Plaintiffs received "spread of hours" premium pay as required by the NYLL. In addition, Movants have shown that these practices were common policy in all three clubs.[12]

Accordingly, Plaintiffs have met their burden and shown that Plaintiffs and the potential opt-ins are similarly situated.

---

[10] Indeed, often one or two affidavits suffice. *See Cohen*, 686 F. Supp. 2d at 331 (complaint and plaintiff's affidavit sufficient); *Francis,* 2008 U.S. Dist. LEXIS 83369 (one affidavit plus deposition testimony).

[11] *See* fn 8, *supra*

[12] *See* fn 3, *supra.*

### C. The Court Should Authorize Prompt Notice To Past And Present Solaris Employees

Article 16(b) of the FLSA states that "An action . . . may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action ***unless he gives his consent in writing*** to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b) (emphasis added). It is well established that the Court has the authority to order opt-in notice to potential plaintiffs. *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978) ("[W]e hold that it makes . . . more sense, in light of the "opt-in" provision of § 16(b) of the Act, 29 U.S.C. § 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case."); *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (noting that it is "well settled" that district courts have the right to send out opt-in notice to potential plaintiffs); *LeGrand v. Educ. Mgmt. Corp.,* No. 03 Civ. 9798 (HB) (HBP), 2004 U.S. Dist. LEXIS 17696, at *3 (S.D.N.Y. Sept. 1, 2004) ("There can no longer be any doubt that a court has the power to order that opt-in notice be sent to potential class members.").

The Supreme Court has said that a collective action notice must be "timely, accurate and informative." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-72 (1989). The proposed notice submitted by Movants[13] is based on the Federal Judicial Center's model employment discrimination notice, and meets those criteria.

The proposed notice tells potential opt-ins:

- Why they have been contacted;
- What the case is about and who is involved;

---

[13] Gonnelli Decl., Exhibit I, [Proposed] Court Authorized Notice Concerning Solaris (the "Notice").

- How to get involved in the case and the consequences of choosing to opt in to the case or not;
- How to contact plaintiffs' counsel with any questions;
- The respective positions of the parties and that the Court has not determined the merits of the claims; and
- Not to contact the Court.

Accordingly, the proposed notice should be approved.

With respect to the scope of the class, notice to the New York workers dating back six years before the complaint was filed is appropriate because Plaintiffs have alleged violations of the New York Labor Law which carries a six-year statute of limitations.  Federal courts in New York which have taken supplemental jurisdiction over New York Labor Law claims permit notice to cover the larger statute of limitations period under the NYLL.  *See, e.g., Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998) ("[P]laintiffs in this action are also seeking relief under New York' labor laws, which provide a six year statute of limitations … Accordingly, the Court authorizes notice to restaurant employees who worked for the 14 Ark restaurants located in New York to go back six years.") (internal citations omitted).[14]

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court: (1) conditionally certify this action as a collective action pursuant to 29 U.S.C. § 216(b); (2) order Defendants to

---

[14] *See also Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007) ("[B]y virtue of the plaintiffs' New York Labor Law claims, notice will be sent to employees who have worked for the defendants over the last six years whether or not the FLSA action is subject to a shorter statute of limitations."); *Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG) (RER), 2007 U.S. Dist. LEXIS 75817, at *18-19 (E.D.N.Y. Oct. 11, 2007) ("Given that I can properly exercise supplemental jurisdiction over the NYLL claims arising out of the policies complained of here, notice to all similarly situated employees who worked for VLM during the six years prior to the filing of this complaint is proper."); *Harrington v. Educ. Mgmt. Corp.*, No. 02 Civ. 0787 (HB), 2002 U.S. Dist. LEXIS 8823, at *2 (S.D.N.Y. May 16, 2002) (authorizing FLSA notice to all similarly situated employees who worked for defendant in New York in the past six years due to NYLL claims).

produce the name, last known mailing address, email address (where applicable), job title, and dates of employment for each potential opt-in plaintiff employed by the defendants between April 18, 2005 to the present for the Hawthorne and Yorktown clubs and from April 18, 2008 to the present for the Stamford Club; and (3) authorize the issuance of Plaintiffs' Proposed Notice.

| | |
|---|---|
| Dated: May 11, 2011<br>New York, New York | Respectfully submitted,<br><br>**FARUQI & FARUQI, LLP**<br><br>By:  */s/Adam Gonnelli*<br>     Adam Gonnelli (AG-4782)<br><br>369 Lexington Avenue, 10th Floor<br>New York, New York 10017<br>Telephone: (212) 983-9330<br>Facsimile: (212) 983-9331<br><br>*Attorneys for Plaintiffs* |